660 So.2d 1052 (1995)
James HEUSS, Appellant,
v.
STATE of Florida, Appellee.
No. 92-0737.
District Court of Appeal of Florida, Fourth District.
March 15, 1995.
Order on Grant of Rehearing August 23, 1995.
*1053 Richard L. Jorandby, Public Defender, and Eric M. Cumfer, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee.
DELL, Chief Judge.
James Heuss appeals his convictions for sexual battery on two children and for lewd assault on a third child. After two mistrials, a jury found him guilty on Count I of sexual battery of Child A, age seven at trial, on Count II of sexual battery of Child B, age nine at trial, and on Count III for lewd assault on Child C, age eight at trial.[1] Appellant contends the trial court erred when, without making the requisite statutory findings, it admitted multiple hearsay statements of the victims, pursuant to the Child Sexual Abuse Hearsay Exception. See § 90.803(23), Fla. Stat. (1991). Appellant also contends the trial court erred in failing to grant a judgment of acquittal on the charges of sexual battery as alleged in Counts I and II of the information; in failing to make sufficient findings of fact concerning the child-victims' competency; in admitting expert testimony that invaded the province of the jury and commented on the credibility of child-witnesses; in failing to grant a new trial based upon prosecutorial misconduct during closing argument; and finally, in instructing the jury on reasonable doubt. We disagree and affirm.
The parents of the children first learned of the alleged abuse after the fiancee of the mother of Child A informed her that her daughter had performed oral sex on her younger brother. When the mother confronted the child, she explained that she had learned the act from appellant when he did the same thing to her. The mother discussed her child's claim of sexual abuse with her sisters, the mothers of the other two victims. When the mother of Child A spoke with her two nieces, Child B said that appellant had touched her "on [her] bottom, touched her privates in between [her] legs with his fingers and licked her private parts and that it hurt." Child C stated that he had touched her "on [her] bottom, and in between [her] legs," and that he kissed and hugged her, but did not remove her clothing.
A deputy sheriff responded to the parents' complaints. The parents told the deputy that appellant had babysat all of their children over a period of six months, from June to December 1989. The deputy interviewed each child out of the presence of the other two children. The deputy testified that Child A said appellant put his mouth in her private area and she felt his tongue touching her private area. Child B stated appellant penetrated her private parts with his finger and at one point showed her his penis. Child C told him appellant touched her buttocks and her private area while she was fully dressed. A few days later, the deputy, accompanied by another deputy sheriff, conducted taped interviews of the three children. The second deputy testified that Child A stated appellant had taken her into the bedroom of his apartment, laid her down on the carpet, removed her clothing and placed his tongue in her vagina. Child B informed him that appellant had placed his finger within her vagina at least five times. The deputy also testified that Child C told him that appellant had touched her numerous times between the legs, the area she knew as her "privates," and that he patted her buttocks on several occasions. The record reflects that the taped interviews were published to the jury.
Each of the children testified during trial. The trial court made inquiry into the competency of Child A to testify. The court concluded *1054 that Child A was a "bright, intelligent, alert young lady, seven years of age, knows the difference between telling the truth and telling a lie and is competent to testify in this procedure." Appellant made no objection as to Child A's competency to testify and declined the opportunity to conduct his own voir dire of the child. Child A testified as follows:
Q. Okay. Did you  Were you in Jim's apartment very many times?
A. Yes.
Q. Can you  Do you got [sic] any idea of how many?
A. No.
Q. Okay. Did anything happen to you unusual in his apartment?
A. Yes.
Q. Will you tell me what it was? Tell me what happened.
A. I went in the bathroom to go pee and then he went in the bathroom and laid me on the ground.
Q. Uh-huh. Is the bathroom in his apartment?
A. Yes.
Q. And he laid you on the carpet?
A. Yes.
Q. And what happened to the door?
A. He closed it.
Q. Okay. And when he put you down on the carpet, what happened to you then?
A. He licked my private.
Q. Between your legs?
A. Yes.
Q. How many times did he do that?
A. Once, two.
Q. Two times?
A. Yes.
Q. Did you have any clothes on from here down?
A. No.
Q. How did you get your clothes off?
A. He pulled my pants down.
The record also reflects that during cross-examination, Child A responded affirmatively to questions that established prior inconsistent statements in her deposition. On redirect, however, she reaffirmed her intent to tell the truth and reiterated her testimony given on direct examination.
As to Child B, the trial court concluded without objection from appellant that
she has an appreciation to understand the difference between right and wrong and telling a lie and telling the truth. She's here with the capacity and intent to tell the truth. And accordingly, I would find her to be competent to testify in this matter.
Child B testified in part:
Q. Would you ever sleep in the waterbed?
A. Once or twice.
Q. Okay. And when you slept on the waterbed, would you sleep by yourself or would there be somebody else in the bed?
A. There would be somebody else.
Q. Who else would be there?
A. Him. Jim.
Q. And this would be at night?
A. Uh-huh.
Q. Did anything  what happened there in the bed?
A. He would keep touching me everywhere.
Q. You said everywhere. I'm going to point to a couple places on me, okay?
A. (Nodding).
....
Q. Okay. Now, tell me about the breast and where you just said that he touched you down there, what do you mean?
A. He touched me in between the legs, and I didn't like it.
Q. You didn't what?
A. Like it.
Q. What did he touch you with between your legs?
A. His fingers.
Q. How would it feel when that happened?
A. It would make me uncomfortable.
Q. And what would you say to him when he was doing that to you?

*1055 A. Quit it. Stop it.
Q. And what would he say to you?
A. No.
Q. And the first time that he did that to you, what happened that time?
A. He told me to make a promise not to tell my mom.
Q. And what did you do?
A. I was going to tell her, but he told me not to.
Q. Okay. And just because he told you not to, you didn't tell?
A. I was, but he wouldn't let me out of his room. Because I was about do [sic] call my mom, but he wouldn't let me out of the room.
Q. How many times has Jim touched you there between your legs with his fingers?
A. I don't remember.
Q. Okay. Was it more than one time?
A. Uh-huh. Yes.
Q. Okay. If I named a few numbers, would that help you recall?
A. Maybe.
Q. About five times? Was it more than that or less than that?
A. More.
The trial court additionally determined after an appropriate inquiry and without objection, that Child C was competent to testify. Child C testified in part:
Q. How does it make you feel to talk about this, this thing two years ago?
A. Sad.
Q. Okay. And I am going to stand back here, okay, and you just try to look up this way at me, okay?
A. Okay.
Q. Now, remembering back as you testified earlier when you were in Jim's apartment, did something different and unusual happen to you there? If it did, I want you to tell us about it, okay?
A. Okay.
Q. You can go ahead now.
A. Okay. He touched me.
Q. Okay. Honey, you said he touched you. I would like for you to tell us where. Do you know the parts of your body that are only for you to touch?
A. Yes.
Q. And do you have certain names for your body?
A. Yes.
Q. What do you call upstairs? Do you have a name that you call the upstairs part of the private part of your body?
A. Between my legs.
Q. Let's talk about downstairs. What do you call between your legs on your body? Do you have a name for it or call it a certain word?
A. I just say between my legs.
Q. I want you to tell us now where it was that Jim touched you.
A. Between my legs.
Q. And did you have any clothes on?
A. Yes.
Q. And how many times did he do that?
A. A lot.
Q. And where would this happen at?
A. At his house.
Cross-examination revealed that Child C, during her deposition, had denied that appellant had ever touched her. Appellant also established that Child C's father had reviewed her deposition with her before trial, but he did not suggest to her how to answer the questions posed at trial.
The nurse who examined the three children testified as to the results of her examination. The nurse found a tear in Child B's hymenal membrane at the one o'clock position. She stated that the tear was consistent with a finger touching her hymen. The nurse also said that it would be very unlikely that a child would independently touch her hymen to cause such a tear given the amount of pain that she would experience. She did not observe any other physical trauma to Child B and could not state conclusively how the tear occurred or whether the tear was evidence of abuse, but stated the evidence looked "suspicious." She did not find any *1056 evidence of physical trauma to the genitalia of Child A or Child C.
The state also presented expert testimony concerning the characteristics of a child-victim's testimony concerning sexual abuse. The state's expert explained a child's reluctance to volunteer evidence of abuse and the reasons why a child may recant a story of sexual abuse. The expert also testified as to the proper techniques of questioning a child-victim and the effect of repeated and leading questions on a child's perceptions of the events.
Appellant admitted that he had babysat the children in his apartment but denied all allegations of sexual abuse. He attributed the claims of sexual abuse to the bitter demise of his intimate relationship with Child C's mother. The jury found appellant guilty of all counts as charged in the information.
Appellant first contends the trial court erred when it admitted the testimony of three witnesses who related hearsay statements of the child-victims. He argues the trial court did not set forth the requisite findings of reliability as required by statute. See § 90.803(23)(c), Fla. Stat. ("The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection."). The child hearsay exception permits the admission of hearsay testimony in child sexual abuse cases if:
1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and
2. The child ...
a. Testifies; ... .
See § 90.803(23)(a)1-2, Fla. Stat.
The state argues that appellant did not preserve this issue for review because he failed to object to the lack of specific findings concerning the reliability of the children's hearsay statements as related by Child A's mother and the two deputies. The record, however, contains numerous objections by appellant to the admission of these statements. In pretrial motions, appellant challenged the trustworthiness and reliability of the child-victims' statements based upon possible contamination of the children's statements as a result of discussions with their parents and other children; leading questions by Child A's mother and the deputies; untimeliness of the statements in relation to the events; and the lack of spontaneity of the children's statements. We hold that appellant adequately preserved this issue for appellate review. See Hopkins v. State, 632 So.2d 1372, 1376 (Fla. 1994) (holding that defense counsel's general objection to the reliability of hearsay evidence necessarily encompassed the sufficiency of the judge's findings as to that reliability and counsel was not required to specify each finding of fact made pursuant to section 90.803(23) to which he was objecting).
Appellant's contention emanates from the following findings of the trial court concerning the admissibility of the mother of Child C and the deputies' testimony relating to the children's statements:
Well, I further find that the reliability of these assertions, as much reliable as they can be under the circumstances, appear to be reliable on the questions asked of them other than perhaps the leading question regarding the one mother issue as she refers to Jim as opposed to other individuals. That was of some concern; but I think that not of a sufficient nature as things were presented to this court.
....
[T]he contents and circumstances of the statements certainly provide proficient [sic] safeguard of reliability. This is predicated on the totality of the statements, testimony forthcoming by the deputy, the circumstances it was given and the contents of statement, and, accordingly, inasmuch as the children are going to be testifying in the case, which would satisfy the second prong of the test under Subparagraph 23, the court will permit, over the objection of the defense, the hearsay statements *1057 of the children made to Deputy Hibbert to come into testimony in the presence of the jury.
Appellant asserts these findings are no more than the mere recitation of "boilerplate" language as specifically disapproved of in Hopkins. In Hopkins, the supreme court stated:
Mere recitation of the boilerplate language of the statute, as the trial court did here, is not sufficient. [Jaggers v. State, 536 So.2d 321, 325 (Fla. 2d DCA 1988)]. Absent the specific findings of reliability mandated by the statute, a reviewing court cannot determine whether the statements were in fact reliable. Failure to make specific findings not only ignores the clear directive of the statute, but also implicates the defendant's constitutional right to confrontation... .
Even though the constitutional right to face-to-face confrontation is involved in both evidentiary issues raised in this case, a constitutional error does not automatically require reversal of a conviction. In fact, "constitutional errors, with rare exceptions, are subject to harmless error analysis." State v. DiGuilio, 491 So.2d 1129, 1134 (Fla. 1986)... . In fact, the Supreme Court has specifically determined that violations of the Confrontation Clause, including denial of face-to-face confrontation are subject to harmless-error analysis.
Id., 632 So.2d at 1377. We agree with appellant that the findings of the trial court merely track the statutory language of section 90.803(23) and, as such, are insufficient. See Hopkins, 632 So.2d at 1377; Lacue v. State, 562 So.2d 388 (Fla. 4th DCA 1990); Diaz v. State, 618 So.2d 346 (Fla. 2d DCA), rev. denied, 626 So.2d 204 (Fla. 1993).
The supreme court in Hopkins, when confronted with constitutional error, further explained that the trial court's failure to make adequate findings pursuant to section 90.803(23) does not constitute per se reversible error and that a harmless error analysis is appropriate. Although this case does not implicate any deprivation of appellant's constitutional right of face-to-face confrontation, Hopkins compels us to review the admission of these statements under harmless error principles. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); see also Diaz, 618 So.2d at 349 (applying harmless error principles to erroneous admissions of child hearsay evidence). After a careful review of the record, we conclude beyond a reasonable doubt that the improper admission of the child hearsay statements did not affect the verdict. See DiGuilio, 491 So.2d at 1139. The impermissible testimony was cumulative of the properly admitted evidence. The child-victims' in-court testimony and their published taped interviews provided sufficient competent evidence to make a prima facie case of sexual abuse. Additionally, Child B's testimony is further buttressed by the testimony of the nurse concerning the physical trauma. Accordingly, we hold the error to be harmless.
We also hold the record contains sufficient evidence to support appellant's conviction of sexual battery against Child A and Child B under section 794.011(2), Florida Statutes (1991). In Count I of the information, the state alleged appellant caused his tongue to penetrate or unite with the vagina of Child A. We reject appellant's contention that Child A's reference to her "private parts" did not sufficiently describe the child's vagina to convict him of the offense as charged in the information. The statute defines this particular sexual battery to mean "oral union with the sexual organ of another." § 794.011(1)(h), Fla. Stat. (emphasis added); see Hodak v. State, 555 So.2d 1326 (Fla. 5th DCA) (stating a defendant's tongue is encompassed within the term "oral" as defined within the statute which expressly proscribes oral union with the sexual organ), rev. denied, 564 So.2d 1086 (Fla. 1990). The state correctly points out that the legislature, in repealing the rape statutes in favor of the crime of sexual battery, retained the "private parts" concept of rape by including the phrase "union with the sexual organ of another," thus perpetuating the concept that a defendant's oral penetration of or contact with any part of the female's private parts also constitutes a crime. See Firkey v. State, 557 So.2d 582, 585 (Fla. 4th DCA 1989), rev. denied, 574 So.2d 140 (Fla. 1990). The term "female parts" includes the vagina, the labia *1058 minora and the labia majora. Id. Therefore, the publication of Child A's taped interview and her in-court testimony provided competent, substantial evidence to support appellant's conviction for unlawful union with the child's private parts.
Likewise, we find no error in the trial court's denial of the motion for judgment of acquittal on Count II of the information, charging appellant under section 794.011(2) with commission of a sexual battery upon Child B by causing his finger to penetrate the victim's vagina. A sexual battery with "any other object" than a sexual organ occurs only if the victim's vagina is penetrated. § 794.011(1)(h), Fla. Stat. Child B, in the taped interview, stated that appellant "in a way" put one finger inside her vagina. She also stated that he would "try to stick it in" and "it would hurt." The inferences arising from the circumstantial medical evidence of injury to the child's genitalia and the child's own statements sufficiently contradicted appellant's claim of innocence to preclude a judgment of acquittal. See State v. Law, 559 So.2d 187 (Fla. 1989). Compare Firkey (reversing the defendant's conviction for sexual battery where the victim did not positively state that the defendant's finger penetrated her vagina and no expert testified as to a vaginal examination).
We find no merit in appellant's argument that the prosecutor made numerous inflammatory arguments during closing argument thereby creating fundamental error. When considered in context, the trial transcript confirms that the prosecutor's comments were fair response to assertions that the witnesses had fabricated the allegations of abuse and testified only upon coaching by their parents. Appellant's other claims of prosecutorial misconduct do not warrant discussion.
Appellant's remaining points on appeal present no error. The trial court adequately determined the children's competency and the record does not reveal an objection to the trial court's findings as to each child. The expert witness did not testify as to the truthfulness of the child-victims nor did he comment on their credibility as witnesses. Finally, the trial court did not err when it gave the Florida Standard Jury Instruction on reasonable doubt. See Woods v. State, 596 So.2d 156 (Fla. 4th DCA), rev. denied, 599 So.2d 1281 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 256, 121 L.Ed.2d 188 (1992).
Accordingly, we affirm appellant's convictions and sentences in all respects.
AFFIRMED.
STONE and KLEIN, JJ., concur.

ON MOTION FOR REHEARING
PER CURIAM.
We grant rehearing and republish our opinion of March 15, 1995, adding the following paragraphs for the purpose of addressing the argument raised by Appellant's motion for rehearing that by this opinion the court has used a harmless error analysis in affirming Appellant's conviction notwithstanding that a harmless error argument was not asserted in the state's brief.
Appellant contends that this court lacks authority to sua sponte apply harmless error, citing Lewis v. State, 623 So.2d 1205, 1208 (Fla. 4th DCA 1993). However, Lewis does not directly hold that this court may not sua sponte consider harmless error, although the opinion contains dicta, citing to Ciccarelli v. State, 531 So.2d 129 (Fla. 1988), and Taylor v. State, 557 So.2d 138 (Fla. 1st DCA 1990), indicating that such may be the case.
Because we do not construe Ciccarelli as imposing a restriction against our sua sponte applying harmless error standards, we here clarify that appellate courts do have the authority and discretion to do so, as we have in this opinion. In Ciccarelli, the court said "[a]ccordingly, if the state has not presented a prima facie case of harmlessness in its argument, the [appellate] court need go no further." Id. at 131. (emphasis added) We do not interpret this language as imposing a jurisdictional limitation on appellate review. Rather, it is a recognition by the supreme court that appellate courts are not required to consider harmless error where it is not asserted by the state. We note that section 59.041, Florida Statutes, the harmless error *1059 statute, otherwise requires us to consider whether any error is harmless.
We discern no public policy supporting a conclusion that a review court must reverse an otherwise valid conviction for an error that is deemed harmless simply because harmless error was not argued in the state's brief. Therefore, we conclude that this court has discretion to sua sponte affirm on the ground that an error is harmless.
AFFIRMED.
DELL, STONE and KLEIN, JJ., concur.
NOTES
[1] To protect the identity of the children we will refer to the children as Child A, Child B and Child C.