THOMPSON, J.
Dwayne Sweat appeals his judgment for carjacking with a deadly weapon and kidnapping with a weapon and with the intent to commit a felony. We affirm.
Stacy Shoemaker and her roommate, Juliet Gomes, drove to a convenience store *464 in Shoemaker’s vehicle, a green Hyundai. Shoemaker went inside the store and while paying for her purchase, heard a scream. Shoemaker went to the door and heard Gomes say, “Take the ear, take the car.” At that point, Gomes was sitting in the driver’s seat and a man was in the passenger seat saying “just f — ing drive.” Shoemaker told the store clerk to call 9-1-1 as Gomes and the man drove away with Gomes still in the car. Shoemaker did not know who the man was, and she did not give him permission to drive her car. The police arrived within five minutes and informed Shoemaker that they had found Gomes and the vehicle. The officers took Shoemaker to the scene. Shoemaker identified Sweat as the person who took her car.
Police officer Jay Draisin testified that he came into contact with Sweat on the night of the incident when responding to a call about a carjacking. Draisin and the officer with whom he was riding saw a green Hyundai. Draisin pulled behind the vehicle, observing that the vehicle tag-number matched the partial tag number he was provided and that the suspect in the passenger seat matched the description provided. Draisin and the other officer stopped the vehicle and secured Sweat and a knife lying next to the vehicle door. Officer Dean Mazzoli testified that when he pulled Gomes from the vehicle, she said, “Thank God. I thought he was going to kill me. He had a knife.” Sweat was found guilty as charged, and in a special verdict, the jury found that Sweat had carried a weapon.
Sweat argues that the trial court erred conducted an incomplete Nelson[1] inquiry upon Sweat’s request to discharge counsel. Sweat argues that his conviction should be reversed because the court failed to advise him that upon the discharge of his appointed attorney, he would not be entitled to another state-appointed attorney. On 20 September 2002, Sweat filed a motion to discharge his attorney, alleging ineffective assistance of counsel and personal conflict. A hearing on the motion was convened on 19 December 2002, but Sweat withdrew the motion. Thereafter, on 11 February 2003, Sweat moved to “determine counsel.” Sweat requested a new attorney, alleging a breakdown in the relationship with his current attorney and that he had filed a bar grievance. Sweat alleged that he had asked his attorney to file a motion to suppress, to depose an officer at the crime scene, and to further investigate evidence of Sweat’s intoxication. Sweat’s attorney stated that he had deposed most of the witnesses who would testify at trial and that he had decided against filing a motion to suppress. Addressing Sweat, the court stated:
Let me tell you what. I do not fault you for filing this motion and kind of airing your concerns. You are basically facing a potential two life sentences, potentially. Not that it’s going to happen, but that’s the worst case scenario. That is not a very pleasant thing to be looking at. And it would cause any reasonable man to be somewhat uncomfortable.
From what I can tell based on speaking with Mr. Barrett and Miss Brennan, speaking with you, that I don’t find Mr. Barrett has been deficient in any way, let alone negligent in his representation of you.... And so I’m going to deny your motion at this time....
Although it is well-settled that when a defendant voices a seemingly substantial complaint about counsel, the court should make a thorough inquiry concerning the reasons for a defendant’s dissatis *465 faction, the trial court’s failure to make a thorough inquiry and thereafter deny the motion for substitution of counsel is not in and of itself a Sixth Amendment violation. Kott v. State, 518 So.2d 957, 958 (Fla. 1st DCA 1988). Where a defendant, before the commencement of trial, makes it appear to the trial court that he desires to discharge his court-appointed counsel, the trial court, in order to protect the indigent’s right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the state may not thereafter be required to appoint a substitute. Nelson v. State, 274 So.2d 256, 258-259 (Fla. 4th DCA 1973).
Under Nelson, the trial court should have informed Sweat that if he dismissed his current attorney, a second state-appointed attorney may not be provided. However, the trial court’s failure to give this advice to Sweat is subject to the harmless error test. See Lewis v. State, 623 So.2d 1205, 1208 (Fla. 4th DCA 1993). Because Sweat never discharged his attorney, the court’s failure to advise him that a second attorney may not be appointed if he dismissed his current attorney was harmless.
Next, Sweat argues that the trial court improperly admitted hearsay under the excited utterance exception to the hearsay rule because there was no good faith showing that the declarant was unavailable. An excited utterance has been held to be a “firmly rooted” hearsay exception. State v. Frazier, 753 So.2d 644, 646 (Fla. 5th DCA 2000). Moreover, the unavailability of the declarant is not a prerequisite to admissibility of an excited utterance. § 90.803(2), Fla. Stat.; Frazier, 753 So.2d at 646 n. 3 (citing People v. Cepeda, 69 F.3d 369 (9th Cir.1995)). No error has been shown.
Finally, Sweat contends that because the trial court conducted an insufficient Nelson inquiry and improperly admitted the excited utterances, the trial court should have granted his motion for a new trial. This issue is without merit because the grounds upon which the motion was based are without merit.
AFFIRMED.
MONACO and TORPY, JJ., concur.

. Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).