POLEN, J.
 

 Appellant seeks review of his convictions for sexual battery with a deadly weapon and burglary with assault. Appellant raises multiple issues on appeal, but we write only to address his argument that the trial court erred in overruling his hearsay objection to a State witness’s testimony that she had personally assigned a key card to appellant. We agree with the State that the subject testimony was not hearsay, and affirm.
 

 In August of 2004, L.A.R. worked as a mobile service manager at the InTown Suites Hotel. L.A.R. helped open the new hotel and was required to live there. Approximately one week before the incident, L.A.R. met appellant, a maintenance man at the hotel. L.A.R. testified that she and appellant did not have a relationship. At approximately 3:00 a.m. on September 3, 2004, L.A.R. woke up to the sound of her hotel room door opening. L.A.R. recognized the intruder as appellant. He was carrying a knife. L.A.R. testified how, over the course of an hour, appellant sexually battered her while holding the knife to her. Appellant’s key card was later found in L.A.R.’s hotel room.
 

 While cross examining L.A.R., defense counsel asked about a lock report:
 

 Q .... you also have or had at the time an all access key card to the hotel, right?
 

 A. Yes, ma’am.
 

 [[Image here]]
 

 Q. And you — with these key cards, you have the ability of generating a lock report?
 

 A. Yes, ma’am.
 

 Q. From—
 

 A. Yes, ma’am.
 

 Q. —the key card?
 

 A. Yeah.
 

 Q. And approximately how many transactions will that lock report print out?
 

 A. Twenty-five to 50 depending on how the parameters are setup at that property-
 

 Q. So 25 to 50 of the past transactions.
 

 A. Yes, ma’am.
 

 Q. On that lock, correct?
 

 A. Yes, ma’am. The date time [sic] and the exact electronic key that opened it.
 

 Thereafter, the defense objected when the State attempted to elicit testimony about the contents of the lock report on redirect examination:
 

 Q. [Prosecutor] Now, before you left that day and went home, left Palm Beach County, did you see a lock report for your room?
 

 A. [L.A.R.] I did see a lock report for my room, yes, ma’am.
 

 Q. And looking at that lock report were you able to see that?
 

 [Defense counsel]: Objection; your Honor; hearsay.
 

 [[Image here]]
 

 [The State]: Judge, it’s not hearsay. It’s ... electronically generated. It’s not person [sic].
 

 The Court: Well, it’s not been established.
 

 [The State]: Okay.
 

 The Court: Sustained.
 

 
 *1191
 
 L.A.R. then proceeded to describe what a lock report is and how it works. L.A.R. testified:
 

 It is generated by the small printer, like a receipt printer, and it has a port like a computer port on it. And it’s a — there’s a hand held battery operated basically computer with a port, and on the bottom part of the lock where you would never notice it there’s a hole and you plug the port into the hole and you read the lock. And it downloads everything, and you take this hand held portable reading to the office to the main terminal that makes all the locks — all the keys, and you plug it in and you would download the lock report.
 

 And from the main terminal console, you print it and it prints out, and it says, as I said, however, the parameters are set whether it’s ten, 25, 50, they’re normally five or more, the exact date and time in military time, and the key card number that opened the door, whether it’s — if it’s a guest room key, a regular guest room key, it will have just a room number. If it’s a staff key, it will say housekeeping one or manager three or whatever.
 

 The witness further explained that a lock report is similar to a Caller ID, stating: “No human can put information into the lock. No human can put information into the hand held except telling it to download the lock report or load the lock report or print the lock report. You can’t change anything, print anything or add anything or delete anything.” At this point, the State asserted that it had established the information from the lock report was not hearsay, noting: “It’s not a person, it’s an electronic device that prints out numbers. The case law is clear that Caller ID, for example, is not hearsay. The officer can read off when he reads off the Caller ID, so likewise, it should be similar.” Defense counsel objected to the information on the lock report being admitted, arguing in part that it was hearsay and not the best evidence. The trial court overruled these objections.
 

 Thereafter, L.A.R. testified that the lock report showed that appellant’s card was used to access her room at 3:00 a.m., and the next entry made to her room was an hour and four minutes later by Ms. Meredith, the other mobile service manager. Over defense objection, Detective Byrd testified that he took possession of the lock report, which showed that L.A.R.’s room had been accessed by appellant’s key card, and the lock report was lost after the detective submitted it to the evidence room.
 

 Carol Meredith was also a mobile service manager who lived at the hotel. Meredith had hired appellant for the maintenance position. Meredith testified that employees sign in and out for keys. Over appellant’s hearsay objection, Meredith testified that she had previously looked at the log-in sheet and determined that the card key found in L.A.R.’s room had been assigned to appellant. Detective Byrd also testified over hearsay objection that the key that opened the room at 3:00 a.m. had been signed out to appellant. Appellant claims it was error to allow these State witnesses to testify that appellant signed out the key card that was found in, and used to open, L.A.R.’s room. We disagree and affirm.
 

 “The standard of review of a trial court’s decision on the admissibility of evidence is generally an abuse of discretion standard. However, the question of whether evidence falls within the statutory definition of hearsay is a matter of law, subject to
 
 de novo
 
 review.”
 
 Burkey v. State,
 
 922 So.2d 1033, 1035 (Fla. 4th DCA 2006) (citing
 
 K.V. v. State,
 
 832 So.2d 264, 265-66 (Fla. 4th DCA 2002)). Hearsay is “a statement, other
 
 *1192
 
 than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” § 90.801(l)(c), Fla. Stat. (2004).
 

 Meredith testified that she had assigned a key card to appellant. When she found a key card in L.A.R.’s room, Meredith said she looked at the key log to refresh her memory that the card she found was the one she issued to appellant. We therefore find that Meredith’s testimony was not hearsay, but based on her own actions in assigning that key card to appellant.
 
 See
 
 § 90.801(l)(c). To the extent that Meredith’s testimony revealed the contents of the key “log” or “lock report,” neither did this testimony constitute hearsay, as the key lock printout is not a statement generated by a person.
 

 “The Florida Evidence Code characterizes hearsay in terms of statements made by ‘persons.’ ”
 
 Bowe v. State,
 
 785 So.2d 531, 532 (Fla. 4th DCA 2001). Subsection 90.801(l)(c) defines hearsay as including an out-of-court “statement” of a declarant. Subsection (l)(b) defines a “de-clarant” as a “person who makes a statement.” “Therefore, only statements made by persons fall within the definition of hearsay.”
 
 Bowe,
 
 785 So.2d at 532. In the
 
 Bowe
 
 case, the court found that “caller I.D. display and pager readouts are not statements generated by a person, so they are not hearsay within the meaning of subsection 90.801(l)(c).”
 
 Id.
 
 We agree with the State’s analogy of a lock report to caller I.D.
 

 Finally, even if the trial court erred in allowing Detective Byrd to testify that the “card had been signed out to the defendant,” the error was harmless because Meredith testified that she personally assigned that key card to appellant.
 
 See Heuss v. State,
 
 660 So.2d 1052, 1057 (Fla. 4th DCA 1995) (finding admission of a hearsay statement harmless where the testimony was cumulative of properly admitted evidence).
 

 We affirm on the remaining issues without comment.
 

 Affirmed.
 

 WARNER and LEVINE, JJ., concur.